**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES E. SMITH** | : | |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-0076** |
| | : | |
| **ALTERNATIVE COUNSELING** | : | |
| **SERVICES,** *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                              FEBRUARY 9, 2021

This matter comes before the Court by way of a Complaint (ECF No. 2), brought by Plaintiff Charles E. Smith, proceeding *pro se*. Also before the Court is Smith's Application to Proceed *In Forma Pauperis* (ECF No. 1). Because it appears that Smith is unable to afford to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. However, for the following reasons, the Complaint will be dismissed, without prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Smith will be granted leave to amend.

## I.    FACTUAL ALLEGATIONS[1]

Smith, an individual currently residing at Harwood House[2] in Upper Darby, Pennsylvania, brings this civil rights action, apparently pursuant to 42 U.S.C. § 1983, alleging violations of his

---

[1]    The facts set forth in this Memorandum are taken from Smith's Complaint (ECF No. 2). Smith's Complaint repeatedly refers to a series of Exhibits labeled A through E, however, the docket does not reflect that any of these Exhibits were actually filed with the Clerk of Court.

[2]    Harwood House, "a non-profit halfway house licensed by the Pennsylvania Department of Health, Drug and Alcohol Program[,]" is "a community-based residential treatment program for adult males who are recovering from substance use disorders. This service emphasizes supportive home style living in a safe environment. The house provides opportunities for independent growth and guidance for the individual. Harwood House helps the person re-establish himself within the community with its holistic approach." *See* https://www.harwoodhouse.us/about-us/ (last visited Feb. 2, 2021).

Eighth Amendment right to be free of cruel and unusual punishment against the following Defendants: (1) Alternative Counseling Associates ("ACA"), a halfway house located in Pottstown, Pennsylvania where Smith previously resided; (2) Michael Greenburg, the owner of ACA halfway house; (3) Kathy Curtin, the executive director of ACA halfway house; and (4) Carlos Saul, an individual employed at ACA halfway house as a staff monitor.  (ECF No. 2 at 1-2.)[3]

Smith alleges that he was transferred to ACA halfway house on March 5, 2020 for the purposes of receiving additional treatment for substance abuse and mental health counseling following completion of his treatment at Valley Forge Hospital's Rehabilitation Center.[4]  (*Id.*) Smith's claims in this action stem from an alleged physical assault that occurred on June 24, 2020, at the hands of Defendant Saul, an employee of ACA halfway house.  Smith alleges that on that date he was returning to ACA halfway house after attempting to attend an N-A Meeting.  (*Id.* at 2.)  Smith claims, however, that despite being referred to this meeting by Defendant Saul, no such meeting existed.  (*Id.*)  When Saul questioned Smith about the meeting upon his return, Smith accused Saul of sending him on a "dummy mission" for the second time that week and told Saul "Just stay in your lane and let me do what I do[.]"  (*Id.*)  At that point, Smith alleges that the two

---

[3]      The Court uses the pagination assigned to the Complaint by the CM/ECF docketing system.

[4]      Smith's Complaint indicates that he was residing at ACA halfway house in order to receive additional treatment related to substance abuse issues and for mental health counseling following time spent in a rehabilitation center, and that his time at ACA halfway house was paid for by his health insurance provider.  Accordingly, it appears that Smith is not subject to the requirements of the Prison Litigation Reform Act ("PLRA") in these circumstances because he was not living at a halfway house as a result of being "accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program[.]"  28 U.S.C. § 1915(h); *cf. Jackson v. Johnson*, 475 F.3d 261, 267 (5th Cir. 2007) (per curiam) (holding that a plaintiff residing in a halfway house is a "prisoner" for purposes of the PLRA if he resides at the halfway house "as a result of his criminal violation"); *Banks v. Balland*, Civ. A. No. 13-58, 2013 WL 786355, at *1 (W.D. Pa. Jan. 18, 2013) (treating plaintiff living in a halfway house as a prisoner for purposes of the PLRA because he was at the halfway house as a result of criminal violations), *report and recommendation adopted*, Civ. A. No. 13-58, 2013 786338 (W.D. Pa. Feb. 28, 2013).

men were "going back and forth" when Saul "came from behind the desk" and "proceeded to swing" his arms and hit Smith in the face twice with his fists.  (*Id.* at 3.)  Another employee, identified only as Lamont, was present at the time of this incident, and he attempted to separate Smith and Saul by taking Smith into a hallway.  (*Id.*)  However, Smith claims that Saul "continued to threaten" him and "came around the side door to continue his attack[.]"  (*Id.*)  Smith asserts that he then "picked up a fire extinguisher from the wall" which apparently caused Saul to stop pursuing Smith.  (*Id.*)  Shortly thereafter, Smith alleges that Lamont took the fire extinguisher and put it back on the wall before escorting Smith outside to Lamont's car to show Smith where the N-A meetings were held.  (*Id.*)

Smith alleges that while he was seated in the passenger seat of Lamont's car, Defendant Saul "suddenly appeared and opened the door, then proceeded to punch" Smith "in the face again multiple times" until Lamont was able to reach the passenger side of the vehicle and separate Saul from Smith.  (*Id.*)  Smith claims that other individuals on the street witnessed this second assault and called the Pottstown Police Department, which prompted Saul to flee in his own car.  (*Id.*)  Smith alleges that a police officer arrived, took his statement and, subsequently, filed assault charges against Saul, while Smith was later transported to the emergency room at Pottstown Hospital for a CAT scan in light of his swollen face to check for head and brain injuries.  (*Id.*)

After this incident, Smith alleges that he submitted a written request to Defendant Curtin seeking his complete file, the incident report filed by Lamont, and the video footage of the incident, but his request was denied.  (*Id.*)  Smith further claims that Curtin also failed to inform his insurance company of the incident, and incorrectly informed his insurance company that he had (1) completed his treatment at ACA halfway house; and (2) did not need any additional treatment, despite Smith having personally requested an extension of his stay which his insurance provider

previously approved.  (*Id.* at 3-4.)  Smith seems to assert that Curtin's denial of the extension of

his stay at ACA halfway house ultimately resulted in a premature release which essentially caused

him to relapse a month later and get evicted from the apartment he moved into after his release.

(*Id.* at 4.)  After his eviction, Smith asserts that he ended up in another rehabilitation center and

ultimately at Harwood Halfway House where he remains today.  (*Id.*)  As a result, Smith seeks

$3,000,000 in damages for the mental anguish and the relapse he suffered as a result of being

removed from treatment prematurely, for pain and suffering caused by the physical assault by Saul,

and for punitive damages.  (*Id.* at 5.)

## II.        STANDARD OF REVIEW

The Court will grant Smith leave to proceed *in forma pauperis* because it appears that he

is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. §

1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if, among other things, it fails to

state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by

the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),

*see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations

omitted).  Conclusory allegations do not suffice.  *Id.*  As Smith is proceeding *pro se*, the Court

construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.       DISCUSSION

### A.        Federal Claims under § 1983

The Court understands Smith's Complaint to allege claims for violations of his civil rights

pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought

in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).

Based on the allegations of the Complaint, it appears that these Defendants – a privately run halfway house, its owner, and its employees – are not subject to liability under § 1983. Pursuant to § 1983, action under color of state law requires that the one liable under that statute have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *Harvey v. Plains Twp. Police Dep' t*, 635 F.3d 606, 609 (3d Cir. 2011)). As currently pled, the Complaint does not allege sufficient facts to support an inference that there is a "close nexus" between the private behavior of these Defendants and the State such that the challenged action here can fairly be treated as that of the State. *Leshko*, 423 F.3d at 339. Nothing in the Complaint alleges that the Defendants Smith seeks to sue are state actors. Beyond alleging their titles and how he came to reside at ACA halfway house and interact with them, Smith does not allege that ACA halfway house, its owner, or its employees had any connection to the state. None of Smith's allegations suggest that the Defendants are anything other than a privately run halfway house and privately employed individuals. Moreover, none of his allegations support the notion that their conduct constitutes state action under § 1983.

Even in circumstances where "private non-profit entities [are] providing services to parolees and probationers[,]" federal district courts regularly find that such entities are not

considered state actors under the relevant legal tests examining the issue of state action. *See, e.g.*, *Veeder v. TRI-CAP*, Civ. A. No. 17-11690, 2020 WL 1867212, at \*5 (E.D. Mich. Jan. 30, 2020), *report and recommendation adopted*, 2020 WL 967481 (E.D. Mich. Feb. 28, 2020) (citing *Porter v. Game*, Civ. A. No. 19-1408, 2020 WL 127580, at \*2 (E.D.N.Y. Jan. 9, 2020) ("'[C]ourts have consistently held that drug treatment facilities that treat individuals pursuant to a condition of parole are not performing a public function.'") (citation omitted); *see also Vaughn v. Phoenix House Programs of N.Y.*, Civ. A. No. 14-3918, 2015 WL 5671902 (S.D.N.Y. Sept. 25, 2015) (collecting cases and finding no state action when the plaintiff agreed to enter the in-patient treatment program as an alternative to incarceration because the state did not direct his treatment, the program was not a public function, and the program had no role in the criminal proceedings). In light of the holdings of other district courts on this issue and the circumstances of this case – where (1) Smith has not pled any connection between the state and the Defendants; and (2) it appears that Smith was at ACA halfway house as a result of private, individualized treatment plan and not in connection with any criminal proceedings – Smith has not alleged sufficient facts establishing that Defendants are state actors.[5]

In its current form, the Complaint fails to allege sufficient facts to state a plausible claim of state action on the part of these Defendants.  Smith's claims against the Defendants is dismissed pursuant to § 1915(e)(2)(B)(ii).  However, the United States Court of Appeals for the Third Circuit has held that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108,

---

[5]     For similar reasons, Smith has also failed to state a plausible Eighth Amendment violation.  The Eighth Amendment's prohibition on cruel and unusual punishment applies to convicted prisoners. *Hubbard v. Taylor*, 399 F.3d 150, 166-67 (3d Cir. 2005); *Santos v. Sec'y of D.H.S.*, 532 F. App'x 29, 33 (3d Cir. 2013) (per curiam) ("[T]he Eighth Amendment only protects those convicted of crimes, not people like Santos' children, who are under the custody of the state, but not prisoners.").  Smith does not allege that he was living at ACA halfway house because he was serving the terms of a criminal sentence. *See supra* n.4.

110 (3d Cir. 2002); *see also Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  Accordingly, the dismissal of Smith's claims is without prejudice, and he is granted leave to file an amended complaint if he is able to set forth sufficient facts to cure the defects identified above.

      **B.**      **State Law Claims**

      Liberally construing the Complaint, it is possible that Smith also intended to bring tort claims under Pennsylvania state law.  The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims, having dismissed Smith's federal claims.  Accordingly, the only independent basis for jurisdiction over such claims is 28 U.S.C. § 1332, which states that a district court can exercise subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business. . . . And a partnership, as an unincorporated entity, takes on the citizenship of each of its partners."  *Zambelli*, 592 F.3d at 419 (citations omitted).  "The burden of establishing federal jurisdiction rests with the party asserting its existence."

*Lincoln Ben. Life Co.*, 800 F.3d at 105 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

Smith does not allege the citizenship of the parties. Accordingly, Smith has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue. Thus, any state law claims will be dismissed for lack of subject matter jurisdiction, without prejudice, to Smith's right to amend the jurisdictional allegations. Alternatively, Smith also has the option of bringing these claims in the appropriate state court.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Smith leave to proceed *in forma pauperis* and dismiss his Complaint, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim. This dismissal is without prejudice to Smith's right to file an amended complaint in this Court if he can cure the defects outlined in this Memorandum. This dismissal is also without prejudice to his right to, alternatively, bring these claims in the appropriate state court. An appropriate Order follows.

*NITZA I. QUIÑONES ALEJANDRO*
*Judge, United States District Court*